**SIGNED THIS: March 23, 2023**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 15-71581 |
| MICHAEL LEROY TARRANT, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## **O P I N I O N**

Before the Court is the United States Trustee's Motion to Reopen Bankruptcy Case. For the reasons set forth herein, the motion will be granted but with conditions.


### I.    Factual and Procedural Background

Michael Leroy Tarrant ("Debtor") filed his voluntary Chapter 7 petition on October 13, 2015. He filed all schedules and other required documents with his petition. Mariann Pogge was appointed as the Chapter 7 trustee and conducted

a creditors meeting on November 23, 2015. The next day, Ms. Pogge docketed a report of no distribution stating that the Debtor had no assets to be administered. The Debtor received his discharge on January 27, 2016, and the case was closed on February 12, 2016.

On November 14, 2022, the Unites States Trustee ("UST") filed a motion to reopen the case. The UST said in the motion that a letter had been received in October 2022 from the Lanier Law Firm stating that the firm represents the Debtor in a pelvic mesh products liability claim for which a $105,000 settlement had been offered. An attorney in the UST's office contacted the firm for further information and learned that the action involved a Roundup claim rather than a pelvic mesh claim. Further, the UST's attorney learned that the Debtor had been diagnosed with cancer on December 1, 2017, and later connected that cancer to his exposure to Roundup. The UST then filed the motion to reopen the case asserting that the Debtor must have been exposed to Roundup for a number of years before his 2017 diagnosis and, on that basis, his claim should be determined to be property of the estate in his 2015 bankruptcy filing.

The Debtor, through his original bankruptcy counsel, objected to the motion to reopen. He asserted that he had not been diagnosed with cancer until December 1, 2017, and, accordingly, had no enforceable cause of action when he filed his bankruptcy two years earlier. At the hearing on the motion to reopen, the attorney for the UST argued that because the Debtor had used Roundup in unknown amounts for unknown periods of time prior to his cancer

diagnosis, the Roundup cause of action was likely property of the estate in his bankruptcy. The UST requested that the case be reopened and that the UST be authorized to appoint a case trustee for the purpose of investigating whether the cause of action was property of the estate. The Debtor maintained his position that he had no knowledge of his cancer or potential cause of action before December 2017.

This Court expressed concern that cases had previously been reopened at the request of the UST under similar circumstances and that those cases should have been more closely scrutinized. Further, it appeared that an in-depth review of when a cause of action accrues for purposes of determining whether it is property of the estate was warranted. A briefing schedule for the parties to present case law on the issues was set. The parties have now both submitted briefs and the matter is ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). A determination of whether to reopen a bankruptcy case is a core proceeding. 28 U.S.C. §157(b)(2)(A), (O). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.   Legal Analysis

*A. Standards for Reopening*

A bankruptcy case may be reopened "to administer assets, accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). Whether to reopen a case is within the broad discretion of the bankruptcy court. *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). The Code does not define "cause" and courts may consider a variety of relevant factors when deciding whether to reopen a case. *Redmond v. Fifth Third Bank,* 624 F.3d 793, 798 (7th Cir. 2010) (citations omitted). A bankruptcy court's decision on whether to reopen a case will only be reversed for an abuse of discretion. *Matter of Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991).

The party seeking to reopen a case has the burden of proving cause. *In re TTC Illinois Inc.*, 617 B.R. 894, 899-900 (Bankr. C.D. Ill. 2020). When the grounds for seeking to reopen a case are to obtain and administer lawsuit settlement proceeds, the court must consider whether such proceeds are property of the estate. *In re Vasquez*, 581 B.R. 59, 66 (Bankr. D. Vt. 2018) (citation omitted). The UST correctly argues that the full merits of the matter sought to be litigated if the case is reopened need not and, in fact, should not be litigated as part of the reopening process. *In re Covelli*, 550 B.R. 256, 263 (Bankr. S.D.N.Y. 2016) (citation omitted). Nevertheless, this Court finds no authority for the UST's current argument that reopening a case is no more than a ministerial act and that motions to reopen should be routinely granted regardless of the merits of the asserted basis for the reopening. To the contrary,

where no showing is made that relief can or should be granted to the moving party upon a reopening, the motion should be denied. *TTC Illinois*, 617 B.R. at 900, 906; *In re Lusher*, 2019 WL 4553432, at *5 (Bankr. C.D. Ill. Sept. 19, 2019).

The UST makes the argument here that because the Debtor's cancer was discovered two years after filing bankruptcy and because he apparently admits that his exposure to Roundup occurred over a period of years preceding his bankruptcy filing, the Debtor's claim against Roundup existed pre-petition and the proceeds of such claim are property of his bankruptcy estate. Similar arguments have been made by the UST in a number of recent cases, and the Court has previously accepted the UST's arguments as a basis for reopening cases even in the face of objections by debtors. This Court's view on the issue changed, however, in early 2022 when the UST moved to reopen a case filed in 2005 based on a debtor's cancer diagnosis in early 2018 and the filing of a Roundup claim in 2019.[1] When the debtors objected to the reopening, the Court inquired what, if any, factual basis the UST had for alleging that a cause of action for cancer not diagnosed until thirteen years after the bankruptcy filing was property of the estate. After giving the attorney for the UST time to further investigate, the motion to reopen was voluntarily withdrawn by the UST. From the discussions held in that matter, however, the Court learned that the UST routinely requests the reopening of a bankruptcy case when her office receives notice that a person who was previously a bankruptcy debtor

---

[1] *In re Kevin Lee Taylor and Janice Doreen Taylor*, case # 05-74490, filed August 25, 2005, in the United States Bankruptcy Court for the Central District of Illinois.

has a personal injury claim. And although the attorneys for the UST appearing on such motions regularly assure objecting debtors that any trustee appointed will undertake a review of whether the cause of action is property of the estate before beginning to administer the property, this Court questions whether that is happening in every such case.[2]

In addition to the Court's concerns about the factual basis being routinely asserted by the UST to reopen certain cases, it also appears that the UST has been relying on outdated case law to support the motions to reopen. As will be explained below, the UST's brief cites old case law and ignores more relevant, current case law. A full review of such relevant case law is required to explain why the UST's practice of seeking to reopen cases based on illnesses or injuries diagnosed post-petition is faulty.

### B. Determining Whether a Cause of Action is Property of an Estate

According to the UST, the controlling case on when a cause of action becomes property of a bankruptcy estate is *Segal v. Rochelle*, 382 U.S. 375 (1966). *Segal* involved the issue of whether a tax refund received due to the application of a loss carryback was property of a bankruptcy estate. Because the taxes sought to be refunded had been paid pre-petition and the loss that

---

[2] Before making this statement, the Court reviewed every motion to reopen filed in the Central District of Illinois, Springfield Division, within the last five years. Considering only the cases reopened to administer tort claims based on exposure to toxic chemicals or the implantation of medical devices, the review yielded a mixed bag of results. Some reopened cases were quickly closed after a reappointed trustee filed a report of no distribution, suggesting that the trustee either determined that the claim was not property of the estate or, even if it was, it was not substantial enough to administer. In a number of reopened cases, however, newly appointed trustees moved quickly to settle pending causes of action, and the docketed time records for such trustees show virtually no time spent reviewing medical records or otherwise investigating when the causes of action accrued or whether a credible case could be made that the causes of action were property of the estate.

generated the refund had also occurred before the bankruptcy filing, the Court held that the refund was "sufficiently rooted in the pre-bankruptcy past" to constitute property of the estate. *Id.* at 380. The debtors' argument in *Segal* that they could not claim the refund until the end of the tax year—a date that was admittedly post-petition—did not prevail. *Id.* As the UST points out, the "sufficiently rooted" test has continued to apply to tax refunds but has also been expanded by some courts to bring other types of post-petition property into bankruptcy estates.

The UST cites *In re Richards*, 249 B.R. 859 (Bankr. E.D. Mich. 2000), as an example of the continuing validity of *Segal's* "sufficiently rooted" test. Indeed, *Richards* cited *Segal* and, although acknowledging a post-*Segal* change in bankruptcy law with the adoption of the Code, suggested that *Segal* is still good law in finding that a claim for an asbestos injury diagnosed post-petition was property of the estate because the asbestos exposure occurred pre-petition. *Id.* at 861-62. The UST also cites *In re Carroll*, 586 B.R. 775 (Bankr. E.D. Cal. 2018), in support of the assertion that the "sufficiently rooted" test controls the decision here. But *Carroll* fully acknowledged the criticism by some courts of continued reliance on *Segal* and based its ruling on whether the debtor had an enforceable legal or equitable interest in property at the time of the bankruptcy filing. *Id.* at 787-88 (citations omitted). *Carroll* found that the transvaginal mesh products liability claim at issue was property of the estate because the facts presented established all necessary elements of the debtor's claim had occurred pre-petition and she therefore had a legal interest in the

claim when she filed her bankruptcy. *Id.* at 789. *Carroll* does not support the UST's position.

The concerns about the continuing use of *Segal's* "sufficiently rooted" test stem not from criticism of the original decision but, rather, from adoption of the Code and changes in the case law post-*Segal.* The Eleventh Circuit provided a detailed explanation of the reasoning giving rise to the concerns in *In re Bracewell,* 454 F.3d 1234 (11th Cir. 2006). *Bracewell* involved a question of whether a Chapter 7 debtor's right to a crop disaster payment was property of the estate when the crop was harvested and sold pre-petition but the legislation authorizing the disaster payment was enacted post-petition. *Id.* at 1236-37. In finding that the payment was not property of the estate, the *Bracewell* court rejected the argument that because the crop was harvested and sold pre-petition, the claim for a related crop disaster payment was so sufficiently rooted in the debtor's pre-petition activities that the later payment of disaster proceeds would necessarily be property of the estate. *Id.* at 1237-42. The *Bracewell* court found that the 1978 adoption of the Code and specifically the addition of the phrase "as of the commencement of the case" to §541(a)(1) of the Code added a temporal requirement to the definition of property of the estate. *Id.* at 1242. According to *Bracewell,* that new temporal requirement controlled the decision in the case rather than the old *Segal* test, and because the debtor had no enforceable claim for the crop disaster payment as of the commencement of the case, the subsequently authorized disaster payment was not property of the estate. *Id.* at 1247.

In reaching its decision, the *Bracewell* court relied on prior, similar decisions by other courts. In *In re Vote*, 276 F.3d 1024 (8th Cir. 2002), the Eighth Circuit resolved the identical issue of whether crop disaster payments authorized by a statute enacted after the bankruptcy filing were property of the estate. In ruling for the debtor that the payments were not property of the estate, the *Vote* court distinguished *Segal* in that the tax law authorizing the refund at issue in *Segal* was in effect when the bankruptcy case was filed. *Id.* at 1026. The court also expressed concern that a finding in favor of the trustee would allow the trustee to assert rights that the debtor did not have at the commencement of the case. *Id.* Although the scope of §541 of the Code is broad, the *Vote* court relied on legislative history to narrow its scope under the circumstances presented because the provision was "not intended to expend [sic] the debtor's rights against others more than they exist at the commencement of the case." *Id.* (quoting S. Rep. No. 95-989, at 82 (1978) *reprinted in* 1978 U.S.C.C.A.N 5787, 5868). The *Vote* court also noted that many of the cases cited by the trustee that continued to rely on *Segal* involved factual situations in which the debtor had a "readily discernible legal interest" in the property in question at the commencement of the case. *Id.* at 1026-27.

The *Bracewell* court also relied on *In re Burgess*, 438 F.3d 493 (5th Cir. 2006). *Burgess* also involved crop disaster payments paid based on pre-petition crop losses but authorized only by a statute enacted post-petition. In finding for the debtor that the payments were not property of the bankruptcy estate, *Burgess* held that "*Segal's* 'sufficiently rooted' test did not survive the

enactment of the Bankruptcy Code." *Id.* at 498. Noting the addition of the phrase "as of the commencement of the case" to §541(a)(1), the *Burgess* court found that, "under current law, a debtor's interest in property may be contingent—or enjoyment of the interest may be postponed—until after bankruptcy, but the debtor must have had a prepetition legal interest nonetheless" if it is to be considered property of the estate. *Id.* at 499. The *Burgess* court acknowledged that, in enacting the Code, Congress had "specifically approved of *Segal's* result" but noted that the approval was only as to the result that tax refunds are property of the estate. *Id.* at 498 n.6; *see also* S. Rep. No. 95-989, at 82 (1978) *reprinted in* U.S.C.C.A.N. 5787, 5868 ("The result of *Segal v. Rochelle*, 382 U.S. 375, is followed, and the right to a refund is property of the estate.").

The Seventh Circuit has not spoken on the issue as directly as the Eleventh, Eighth, and Fifth Circuits. The UST cites *In re Meyers*, 616 F.3d 626 (7th Cir. 2010), to support the argument that the *Segal* "sufficiently rooted" test should control here. But *Meyers* was a tax refund case and therefore involved the one type of property for which it is generally not disputed that, at least as to the result, *Segal* remains relevant. *Id.* at 628. Nevertheless, *Meyers* questioned the ongoing validity of the *Segal* test, finding that "[t]he fact that reasonable people can identify competing methods for calculating the prepetition share of the refunds betrays the incompleteness of a rule that simply calls for identifying at what time an asset became 'rooted.'" *Id.* Importantly, *Meyers* also did not involve a dispute as to whether any portion of the tax

-10-

refund was property of the estate. To the contrary, both parties in *Meyers* agreed that some portion of the tax refund was property of the estate; the dispute involved which of several possible formulas should be used to divide the refund received post-petition to accurately account for the pre-petition portion of the refund that was property of the estate. *Id.* at 630-31. *Meyers* specifically referred to the Code requirement that property interests are determined "as of the commencement of the case" and made clear that the petition date "is the key point for identifying the assets of the estate." *Id.* at 628 (citing 11 U.S.C. §§301(a), 541(a)(1)).

The holding in *Meyers* referencing the commencement of the case as the date for determining interests in estate property is consistent with prior Seventh Circuit cases. In *In re Carlson*, 263 F.3d 748, 750-51 (7th Cir. 2001), the court held that when an attorney-debtor had completed all legal work necessary to earn a contingent fee pre-petition, that fee was property of the estate. The court declined, however, to create a rule that all interests of attorneys in pre-petition contingent fee contracts would be property of a bankruptcy estate. To the contrary, the court noted that when a fee has not been fully earned pre-petition and the attorney has work to do to recover any settlement or fee, other interests may cause the potential fee to not become an asset of the estate. *Id.* Likewise, in *In re Sanders*, 969 F.2d 591, 593-94 (7th Cir. 1992), the court held that a debtor's pension contributions could not be reached by a trustee because the debtor had no present right, as of the commencement of the case, to withdraw the funds. The court cautioned that to

-11-

hold otherwise would be to "grant the [t]rustee greater rights than those of the [d]ebtor." *Id.* at 594 (citation omitted). Further, in *Hoseman v. Weinschneider*, 322 F.3d 468, 477 (7th Cir. 2003), the court, albeit on other grounds, affirmed a district court opinion reversing in part a bankruptcy court decision that had relied on *Segal* without making a finding that the contract at issue in the case had been entered into pre-petition. *See Hoseman v. Weinschneider*, 277 B.R. 894, 899-900 (N.D. Ill. 2002) ("The debtor must actually have had some sort of pre-petition rights to the property in question in order to trigger the *Segal* 'sufficiently rooted' rule.") (citations omitted). Nothing in any of the Seventh Circuit cases suggests that an expansive reading of *Segal* should control the decision here.

The UST also cites a Seventh Circuit bankruptcy court case in support of the contention that *Segal* should control here. In *In re Marvel*, 372 B.R. 425, 429-33 (Bankr. N.D. Ind. 2007), the bankruptcy court cited *Segal* with approval in finding that the pre-petition portion of a debtor's tax refund was property of the estate. The court rejected the debtor's argument that because the refund was received post-petition, it was not property of the estate; in doing so the court distinguished *Bracewell*, *Burgess*, and *Vote*, noting that a key component of the debtor's interest in the property at issue did not exist at the commencement of each of those cases. *Id.* at 431. The *Marvel* court held that the debtor in the case before it had an enforceable legal right to the tax refund at the commencement of the case even though collection of the refund was delayed by the necessity of waiting until the end of the tax year to file a return.

*Id.* at 431-33. But just as in *Meyers*, the court in *Marvel* determined that only the pre-petition portion of the tax refund was property of the estate. *Id.* at 433-34.

In relying on *Marvel*, the UST overlooked several other Seventh Circuit bankruptcy court opinions that are more directly on point to the issues here. In *In re Brown*, 601 B.R. 514, 522 (Bankr. C.D. Ill. 2019) (Perkins, J.), a bankruptcy court in this district held that a debtor's annual bonus received from her employer post-petition was merely an expectancy and not a legally enforceable property interest at the commencement of the case and therefore was not property of the estate. The *Brown* court specifically acknowledged with approval the finding in *Burgess* that the *Segal* test had not survived the enactment of the Code. *Id.* at 519. The *Brown* court also noted, as the Seventh Circuit had suggested in *Meyers*, that "[t]he use of the metaphor 'sufficiently rooted,' without providing a rationale for distinguishing between sufficient and insufficient roots, is ineffective as a judicial rule of decision." *Id.* at 520 n.2. *Brown* unequivocally held that controlling Seventh Circuit case law requires that the debtor have a right to enforce a property interest as of the petition date for that interest to be property of the estate. *Id.* at 519.

Importantly, *Brown* also noted that any review of the "continuing viability" of the *Segal* test must include consideration of the Supreme Court's decision in *Butner v. United States*, 440 U.S. 48 (1979). *Brown*, 601 B.R. at 519. In *Butner*, the Court held that "[p]roperty interests are created and defined by state law." *Butner*, 440 U.S. at 55. Although *Butner* did not discuss *Segal*,

its clear mandate that state law controls determinations as to the nature and extent of property interests in bankruptcy cases precludes the continuing application of *Segal* to define such interests. *See Brown*, 601 B.R. at 519-20. Following *Butner*, the *Brown* court determined that because the debtor had no enforceable right to her bonus under Illinois law when she filed her case, the bonus paid post-petition was not property of the estate. *Id.* at 522.

The UST also overlooked *Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229 (Bankr. N.D. Ill. 2005). In *Holstein*, the bankruptcy court found that a debtor's legal malpractice claim against his bankruptcy attorneys was not property of the estate because the cause of action "did not exist under Illinois law" as of the commencement of the case. *Id.* at 238. Relying on the "as of the commencement of the case" limitation in §541, the *Holstein* court found that a cause of action must have accrued pre-petition in order for it to be property of the estate. *Id.* at 235. Following *Butner*, the court found that Illinois law controls when a cause of action for legal malpractice accrues and that, under Illinois law, a legal malpractice cause of action could not accrue until an injury had been sustained. *Id.* ("Bad advice without some adverse consequence, after all, is just bad advice.") (citations omitted). The loss the debtor in *Holstein* suffered was the denial of his discharge, which, of course, occurred post-petition. Because the loss that resulted in the cause of action accruing did not occur until after the bankruptcy filing, the legal malpractice claim was not property of the estate. *Id.* at 236.

The *Holstein* court rejected the trustee's argument that *Segal* should control the result because at least some of the bad advice allegedly given to the debtor was given pre-petition and therefore the malpractice claim was sufficiently rooted in pre-petition conduct to make it property of the estate. *Id.* at 237. The court found that courts that read *Segal* expansively have misread *Segal* because the debtor there had a pre-petition enforceable right to his tax refund that was simply delayed due to the requirement of waiting until the end of the tax year to file a return; *Segal* did not involve a situation in which a debtor's property rights had not accrued when the case was filed. *Id.* at 237-38 (citations omitted). The *Holstein* court found that following *Segal* would require it to ignore the temporal requirement of §541 or disregard the state law establishing the cause of action; the court declined to do either. *Id.* at 238.

This Court fully agrees with *Holstein* that *Segal* should not be read so broadly as to bring property into the estate simply because some portion of the conduct involved in establishing a cause of action occurred pre-petition. This Court also agrees with the reasoning of the controlling cases of *Meyers*, *Carlson*, and *Sanders* and the persuasive precedent of *Bracewell*, *Burgess*, *Vote*, and *Brown* that, for property to be property of the estate, the debtor must have an enforceable right to the property as of the commencement of the case. Further, per *Butner*, a debtor's interest in property is defined by state law. Accordingly, a review of when a cause of action for a tortious personal injury accrues and becomes enforceable under Illinois law is required to fully decide the issues here.

### C. Accrual of a Cause of Action under Illinois Law

The Illinois Supreme Court has provided clear guidance for when a personal injury cause of action accrues under Illinois law. A cause of action accrues "when a person knows or reasonably should know of his injury *and* also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981) (emphasis added). By establishing this standard, "an injured person is not held to a standard of knowing the inherently unknowable[.]" *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981). Illinois follows a discovery rule for determining when a cause of action accrues. *Ravin v. A.H. Robins Co.*, 182 Ill. App. 3d 46, 51 (1989).

For a cause of action to accrue, the discovery rule requires the discovery not only of an injury but also of both elements of wrongful cause: cause and wrongfulness. *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶¶21-22. Cause is established by having actual or constructive knowledge that the injury sustained was the result of the acts of another. *Id.* at ¶22 (citing *Nolan*, 85 Ill. 2d at 169; *Roper v. Markle*, 59 Ill. App. 3d 706, 710 (1978)). Wrongfulness is established by having sufficient knowledge of the cause of the injury to spark a reasonable person to investigate whether the conduct causing the injury is legally actionable. *Id.* at ¶23 (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1982)).

The UST did not discuss the impact of *Butner* in resolving the issues here and cited no Illinois cases providing guidance as to when the cause of action at

issue here accrued and became a legally enforceable property right.[3] Absent citation to any contrary case law, this Court finds that the cause of action at issue here accrued only after the Debtor knew or should have known that he was injured, that the injury was caused by the conduct of another, and that such conduct was wrongful.

### C. The UST's Motion to Reopen

The UST has made no showing that the Debtor's claim against Roundup is property of the estate—indeed the UST's position is that no such showing is required at this stage. By every indication, it appears that the Debtor's Roundup claim is not property of the estate. The correspondence from the law firm representing the Debtor on the claim, which the UST attached to the Motion to Reopen, asserts that the Debtor was diagnosed with cancer on December 1, 2017, and did not seek legal representation until early 2019. Those assertions could be easily verified by requesting documentation from the Debtor's personal injury attorneys, and, unless the UST had reason to think that the documentation provided was inaccurate, there would be no reason to reopen the bankruptcy case. Still, the UST wants to investigate whether the

---

[3] The UST does cite *In re Pettibone Corp.*, 90 B.R. 918 (Bankr. N.D. Ill. 1988), for the proposition that, in Illinois, a tort claim is deemed to arise at the time of pre-petition exposure to harmful chemicals, drugs, materials or intrauterine devices, even if the injury remains latent and does not manifest itself until after the case is commenced. But *Pettibone* is wholly inapposite—it involved the bankruptcy of a tortfeasor, not a victim. *Pettibone* did not discuss when a "claim" of a debtor/victim against another becomes property of the estate under §541 and *Butner* but rather dealt with defining when a "claim" against a debtor/tortfeasor arises for purposes of being subject to that debtor's discharge and the automatic stay. *Id.* at 932. In other words, at issue in *Pettibone* was a debtor's liability on a claim—not a debtor's right to assert a claim. The fact that a tortfeasor's liability may exist as soon as it puts defective products out into the marketplace is a wholly different issue than when a victim, who is later injured by the defective product, accrues a claim against the tortfeasor. The UST's reliance on *Pettibone* is not helpful.

Roundup claim is property of the estate and believes that a meaningful investigation can only be done if the case is reopened. That position is not wholly unreasonable, and there is some authority for reopening a bankruptcy case to investigate the mere possibility of whether an asset is property of the estate. *See, e.g., In re Grunewald*, 2018 WL 6975204, at *3 (Bankr. E.D. Wis. Oct. 31, 2018). The UST's Motion to Reopen will be granted and the UST will be authorized to appoint a case trustee to investigate whether the Debtor's Roundup claim is property of this estate based on the standards and guidance set forth in this Opinion.

In considering how to proceed, the UST and case trustee must understand that the expense of investigating whether the Roundup claim is property of the estate will initially fall on the UST or the trustee that is appointed upon reopening. This includes the costs of producing and copying documents and the time spent reviewing documentation, both of which, in this Court's anecdotal experience reviewing attorney billing invoices, may be significant. Likewise, the cost of experts needed to evaluate the medical records and opine on the issues must be initially paid by the UST or case trustee. Of course, these costs might well be reimbursable to the case trustee if it is established that there is an asset of the estate to be administered. But the Debtor will not be forced to incur the upfront costs of producing and copying documents for an investigation that, at least on its face, appears to be unlikely to yield a benefit to the estate.

The UST and case trustee must also understand that, to establish that the Roundup claim is property of the bankruptcy estate, the trustee must establish that the Debtor had an enforceable claim against Roundup when he filed his Chapter 7 case in 2015. That will require more than just proving that the Debtor was exposed to Roundup prior to his bankruptcy filing or that one or more other facts are "rooted in the pre-bankruptcy past." Under Illinois law, evidence that a debtor experienced symptoms long before a medical diagnosis is not dispositive of when a cause of action accrues and will not necessarily trigger the running of the statute of limitations, particularly when the symptoms could be indicative of many conditions and medical experts themselves failed to discover the cause at that time. *See, e.g.*, *Ravin*, 182 Ill. App. 3d at 52-54; *see also Wheeler v. C.R. Bard, Inc.*, 2022 WL 971394, at *3-4 (N.D. Ill. Mar. 31, 2022) (applying Illinois' discovery rule and Seventh Circuit precedent applying the Illinois law). Again, the trustee must prove that the Debtor had cancer prior to filing his Chapter 7 bankruptcy petition and knew or should have known about both the injury and its wrongful cause when he commenced his bankruptcy case.

Finally, both the UST and case trustee must understand that there is no benefit to the estate to push the accrual date of the cause of action back to a point where prosecution of the cause of action would be barred for both the Debtor and the estate by the statute of limitations. Presumably, the Roundup defendant has already done its due diligence and investigated the timing of the claim before making the business decision to settle the claim for a substantial

sum. The Debtor's personal injury attorneys should be able to tell the UST and case trustee if the issue was even raised by Roundup's representatives. Roundup's decision on the timeliness of the claim would not bind the UST or case trustee but should be considered in making an informed judgment about when the cause of action accrued.

Again, the case will be reopened and the UST will be authorized to appoint a case trustee to investigate whether the Debtor's Roundup claim is an asset of his bankruptcy estate. The Court will not authorize any action regarding the administration of the cause of action, be it a request to withdraw the no asset report previously filed, to set a claims bar date, or to obtain other relief, absent proof that the cause of action is property of the estate.

## IV.   Conclusion

Reopening a bankruptcy case so that the UST or case trustee may investigate whether a newly discovered asset is property of the bankruptcy estate is often justified. A debtor may become entitled to one of the types of post-petition property expressly included by statute as property of the estate. 11 U.S.C. §541(a)(5). The UST or case trustee might also learn of property that a debtor failed to schedule but in which the debtor had an enforceable interest when the case was commenced. *See, e.g., In re Awan,* 2017 WL 4179816, at *1 (Bankr. C.D. Ill. Sept. 20, 2017). But the reopening of a case should not be a routine event whenever a debtor in a previously closed case acquires property. And a motion to reopen should not serve to place a burden on a debtor whose

case is closed to prove that any new asset acquired is not property of the estate.

The Court recognizes that it may be common practice for plaintiffs' attorneys to conduct broad searches of online bankruptcy records for their clients before settling a cause of action and if a bankruptcy case is found—no matter how old—to send form letters to trustees and the UST informing them of the expected award. Unfortunately, it has recently become clear that the UST routinely seeks to reopen bankruptcy cases any time her office receives such letters. The Court has serious concerns that, in moving to reopen all such cases, the UST has developed a practice of shifting a burden onto debtors who have limited resources to prove to the UST's satisfaction that an asset is not property of the estate. The practice is unfair and stems from a misunderstanding that *Segal* applies and that a cause of action is property of the estate if there is even a hint of any pre-petition conduct associated with it.

Both this Court and the UST should have the same goal—to make sure that the law is applied fairly and correctly to all litigants in bankruptcy court. The result here should not be driven by the size of any potential settlement or the prospect of being able to pay a significant dividend to creditors if the cause of action is determined to be property of the estate. Rather, the question of whether the cause of action is property of the estate must be determined by strict fidelity to the controlling statutory and case law. That law provides that the cause of action is property of the estate only if the Debtor had an enforceable interest in the cause of action as of the commencement of the case.

Put simply, the test is: Did the Debtor have a cause of action that should have been scheduled at the commencement of the case and, if scheduled, that the trustee could have pursued at the time? With that question in mind, the UST and the case trustee will be given an opportunity to investigate further to determine what evidence, if any, exists that would compel a finding that this Debtor knew or should have known in 2015 that he had cancer that was related to his exposure to Roundup.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###